UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DELUCA'S AUTO REPAIR INC.,
et al.,

      Plaintiffs,

      v.

CITY OF HAZLETON, et al.,

      Defendants.

CIVIL ACTION NO. 3:25-cv-00511

(SAPORITO, J.)

## MEMORANDUM

This is a federal civil rights action concerning an alleged public-private conspiracy to establish a municipal towing monopoly in the City of Hazleton. It was commenced when the plaintiffs filed their nine-count complaint against the 26 named defendants on March 20, 2025. Doc. 1.

Nominally, there are five named plaintiffs, who can be divided into two groups for the purposes of this litigation.

The first group of plaintiffs consists of DeLuca's Auto Repair Inc., a defunct Pennsylvania corporation formerly in the business of providing vehicle towing and salvage services in the Hazleton area,[1] and Cynthia

---

[1] Although the complaint alleges that DeLuca's Auto Repair Inc. is a "defunct" corporation, it does not allege that the corporation has been

*(continued on next page)*

Ann DeLuca, sole shareholder and successor/assignee of the defunct corporation's interests. The complaint refers to these two plaintiffs collectively as "DeLuca's Towing."

The second group of plaintiffs consists of Zenier's Automotive, Inc., a Pennsylvania corporation in the business of providing vehicle towing and salvage services in the Hazleton area, and its two principal shareholders, William George Buggy and Richard M. Buggy. The complaint refers to these three plaintiffs collectively as "Zenier's Towing."

The 26 named defendants are similarly divided into two groups, each of which is represented by separate counsel.

The first, and larger, group of defendants consists of the City of Hazleton and 22 of its municipal officials and employees: (1) Jeff Cusat, the current mayor of Hazleton; (2) Joseph Yannuzzi, his predecessor as mayor of Hazleton; (3) James Perry, president of the Hazleton city council; (4) Tony Columbo, a city council member; (5) John "Jack" Mundie,

---

formally dissolved, and we note that the corporation remains marked as "active" in the state corporations database. *See* Pa. Dep't of State, Business Search, https://file.dos.pa.gov/search/business (File No. 3997465) (last visited Mar. 21, 2026). *See generally* Fed. R. Evid. 201; *Stein v. Matheson*, 539 F. Supp. 3d 463, 471 & n.4 (E.D. Pa. 2021) (taking judicial notice of publicly available state corporation records).

a city council member; (6) Mark Ondishin, a city council member; (7) Lauran Sacco, a city council member; (8) David Sosar, a city council member; (9) Brian Schoonmaker, Hazleton's police chief; (10) Jerry Speziale, his predecessor as police chief; (11) Robert DeMalfi, a Hazleton police captain; (12) Anthony White, a Hazleton police captain; (13) Kirk Wetzel, a Hazleton police lieutenant; (14) Keith McAlarney, a Hazleton police sergeant; (15) Cameo "Mark" Zola, a Hazleton police sergeant; (16) William Gallagher, a Hazleton police detective; (17) Brett Green, a Hazleton police detective; (18) Chris Zubris, a Hazleton police corporal; (19) Diane Panzarella, a Hazleton code enforcement officer; (20) Nadine Sist, a Hazleton code enforcement officer; (21) Christopher Pavlick, a Hazleton right-to-know officer; and (22) Gary Perna, a Hazleton right-to-know officer.

The second group of defendants consists of Paul's Auto Body and Mechanical Repair Center, Inc., a Pennsylvania corporation in the business of providing vehicle towing services in the Hazleton area, and its two principals, Paul F. Sateach and Paul J. Sateach.[2] The complaint

---

[2] Counsel for Paul's Towing has advised the court that the complaint has misidentified these defendants as Paul Sateach Sr. and Paul Sateach Jr. *See, e.g.*, Doc. 9. Their identities are not otherwise in dispute.

refers to these three plaintiffs collectively as "Paul's Towing."

The complaint broadly alleges a long-running civil conspiracy between Hazleton municipal officials and Paul's Towing to eliminate competition and establish a municipal towing monopoly for the benefit of Paul's Towing—a male-owned business with personal and familial ties to Hazleton's political leadership. Primarily, the complaint alleges that, in 2019 and again in 2023, Hazleton issued requests for proposals (RFPs) for an exclusive municipal towing contract. Ultimately, the City awarded both exclusive towing contracts to Paul's Towing in a process that was allegedly rigged to favor Paul's Towing over other, allegedly more qualified bidders, including the plaintiffs. In addition, the complaint alleges that, from 2016 through 2023, the City and its officials refused to complete statutorily mandated salvage paperwork for DeLuca's Towing, preventing the business from disposing of abandoned vehicles it had towed to and stored on its property, causing financial losses in excess of $2.7 million.

On behalf of both Zenier's Towing and DeLuca's Towing, the complaint asserts a § 1983 Fourteenth Amendment procedural due process claim (Count I), a § 1983 Fourteenth Amendment "class of one"

equal protection claim (Count II), a state common law restraint of trade claim (Count III), and a state common law tortious interference with prospective economic advantage claim (Count IV) against "all defendants." On behalf of DeLuca's Towing only, the complaint asserts a § 1983 Fourteenth Amendment sex discrimination equal protection claim (Count V) and a § 1985(3) conspiracy to interfere with equal protection rights claim (Count VI) against "all defendants," as well as a § 1983 Fourteenth Amendment procedural due process claim (Count VII), a § 1983 Fourteenth Amendment substantive due process claim (Count VIII), and a state common law unjust enrichment claim (Count IX) against "all defendants []except Paul's Towing."

For relief, the plaintiffs seek an award of damages, as well as declaratory and injunctive relief.[3]

Both sets of defendants have moved to dismiss the complaint. Doc. 8; Doc. 17. These dismissal motions are fully briefed and ripe for decision. Doc. 14; Doc. 21; Doc. 27; Doc. 28; Doc. 33; Doc. 34.

---

[3] With respect to Count III, asserting a common law restraint of trade claim, the plaintiffs seek injunctive relief only.

## I.   LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies;

and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at \*2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged

on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## II.    DISCUSSION

### A. DeLuca's Towing and Exclusive Towing Contract RFP Processes

We begin with a threshold question of jurisdiction. In Counts I, II, III, IV, V, and VI, DeLuca's Towing asserts federal and state-law claims

concerning the 2019 and 2023 exclusive towing contract RFP processes.[4] The defendants argue that DeLuca's Towing lacks Article III standing to assert claims regarding the 2019 and 2023 exclusive towing contract RFP processes because DeLuca's Towing failed to submit a bid for either contract. We agree.

Unlike Zenier's Towing, which bid on both contracts, DeLuca's Towing failed to bid on either contract. With respect to the 2019 RFP, the complaint alleges that DeLuca's Towing did not request to be evaluated for the 2019 RFP because it did not meet all of the criteria listed in the RFP. Compl. ¶ 73 & n.9, Doc. 1. In particular, DeLuca's Towing did not possess heavy wrecking equipment, which Paul's Towing—the company ultimately awarded the exclusive towing contract—also lacked. *See id.* ¶¶ 73 n.9, 74 & n.10. The complaint alleges that, had DeLuca's Towing understood that the RFP criteria were not all mandatory, it would have submitted a bid. *Id.* ¶ 73 n.9. With respect to the 2023 RFP, DeLuca's Towing declined to participate in what it alleges was a "sham interview" process because it—and all the towers and salvors in Hazleton—"knew

---

[4] Counts I, II, and III are based entirely on the 2019 and 2023 RFP processes, while Counts IV, V, and VI rely on additional allegedly wrongful conduct as well.

that the fix was in." *Id.* ¶¶ 96–99.

Article III standing requires a plaintiff to plead three elements: (1) the plaintiff must have suffered an "injury in fact"—"an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the alleged injury must be "fairly traceable to the challenged conduct of the defendant"; and (3) the alleged injury "is likely to be redressed by a favorable judicial decision." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023).

Here, DeLuca's Towing has failed to satisfy the first element of standing because it did not bid for either towing contract, and thus it has failed to plausibly plead any actual injury.[5] *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 167 (1972) (denying standing to plaintiff challenging discriminatory membership policies because "he never sought to become a member"); *Associated Builders*, 81 F.4th at 290–91 ("[W]ithout an actual . . . injury, evidenced by a past bid . . . , we cannot distinguish

---

[5] The "imminent injury" alternative relates to prospective relief, but DeLuca's Towing is alleged to have ceased business operations, and the complaint does not allege any intent to make a future bid on a towing contract with the City of Hazleton.

Plaintiffs 'from a person with a mere interest' in stopping the [defendants' allegedly discriminatory practice]."); *see also Jayco Sys., Inc. v. Savin Bus. Machs. Corp.*, 777 F.2d 306, 316 (5th Cir. 1985).

The Supreme Court has recognized one exception to the rule that a non-bidder cannot challenge the award of a bid to another party:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). But this exception applies only to challenges to "situations in which some government policy allegedly acts as an impediment to a discrete class of individuals in competition for some government-sponsored benefit by precluding them from competing for the benefit on an equal footing with other applicants"—e.g., minority set-aside programs. *Vaughn v. Consumer Home Mortg. Co., Inc.*, 470 F. Supp. 2d 248, 265 (E.D.N.Y. 2007); *accord Feibush v. Johnson*, No. 17-3134, 2018 WL 347545, at *2 n.3 (E.D. Pa. Jan. 9, 2018) ("[T]his line of

jurisprudence is limited to situations alleging a policy of discrimination against a class of individuals."); *Carik v. U.S. Dep't of Health & Hum. Servs.*, 4 F. Supp. 3d 41, 55 (D.D.C. 2013) (finding that the *Jacksonville* rule was limited to traditional equal protection claims concerning protected classes, such as race, color, religion, sex, or national origin).

Here, DeLuca's Towing's sex discrimination equal protection claim, set forth in Count V of the complaint, is the only such claim that potentially falls within the ambit of *Jacksonville*.[6] But the plaintiffs have not pleaded, much less plausibly so, that DeLuca's Towing was able and ready to bid on either contract, nor that, but for the alleged sex discrimination, it would have submitted a bid on either contract. *See Earle Asphalt Co. v. Cnty. of Camden*, No. 22-2648, 2023 WL 8711815, at *1 (3d Cir. Dec. 18, 2023) ("Whether a party is 'able and ready' is a legal conclusion that depends on the facts. Plaintiffs must plausibly plead that, but for the [alleged discriminatory policy], they would have bid on the

---

[6] Thus, DeLuca's Towing has failed to establish Article III standing with respect to Count I (§ 1983 procedural due process), Count II (§ 1983 class-of-one equal protection), and Count III (common law restraint of trade), each of which is based exclusively on the 2019 and 2023 contracting processes, and Count IV (common law tortious interference) and Count VI (§ 1985(3) conspiracy to violate equal protection rights) to the extent they are based on the 2019 and 2023 contracting processes.

contracts. That would make their past harm concrete." (citation modified)). The complaint alleges only that DeLuca's Towing did not bid on the 2019 contract because it did not satisfy at least one of the published criteria, and that it did not bid on the 2023 contract because it "knew the fix was in." *See* Compl. ¶¶ 73 & n.9, 74 & n.10, 96–99. The complaint further alleges in conclusory fashion that "the defendants intentionally discriminated against them on the basis of sex . . . due to DeLuca's Towing being a female-owned and operated business," *id.* ¶ 211, but beyond the fact that DeLuca's Towing is female-owned and Paul's Towing is male-owned, the complaint fails to allege any facts whatsoever to support a reasonable inference of any gender-based discriminatory intent. The complaint has failed to allege any facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Earle Asphalt*, 2023 WL 8711815, at *1 (quoting *Twombly*).

Accordingly, Counts I, II, and III of the complaint—asserting a § 1983 procedural due process claim, a § 1983 "class of one" equal protection claim, and a common law restraint of trade claim—will be dismissed for lack of Article III standing with respect to plaintiffs

DeLuca's Towing only, pursuant to Fed. R. Civ. P. 12(b)(1). Count IV of the complaint—asserting a common law tortious interference with prospective economic advantage claim—will be dismissed for lack of Article III standing with respect to DeLuca's Towing only, to the extent it is based on the 2019 and 2023 contracting processes, pursuant to Fed. R. Civ. P. 12(b)(1). Counts V and VI of the complaint—asserting a § 1983 sex discrimination equal protection claim and a § 1985(3) conspiracy to violate equal protection rights claim—will be dismissed for lack of Article III standing to the extent they are based on the 2019 and 2023 contracting processes, pursuant to Fed. R. Civ. P. 12(b)(1).

### B. Waiver of Count I Procedural Due Process Claims

In their brief in opposition, the plaintiffs have expressly conceded that their claims asserted in Count I should be dismissed. *See* Am. Br. Opp'n Hazleton Mot. 24–25, Doc. 27; Br. Opp'n Paul's Towing Mot. 21, Doc. 28. The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dribelbis v. Scholton*, 274 Fed. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to

address it in his opposition brief but failed to do so); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases); *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (finding claims waived where plaintiff failed to address defendant's argument in his brief in opposition to a motion to dismiss); *see also LM Gen. Ins. Co. v. LeBrun*, 470 F. Supp. 3d 440, 460 (E.D. Pa. 2020); *Celestial Cmty. Dev. Corp. v. City of Phila.*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012).

Accordingly, Count I of the complaint, asserting procedural due process claims by Zenier's Towing arising out of the 2019 and 2023 RFP processes, will be dismissed as waived and for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## C. Redundant Official-Capacity Claims

The plaintiffs have named the former Hazleton mayor, defendant Yannuzzi, in his personal capacity only. All other city officials and employees are named in both personal and official capacities.

But "[o]fficial capacity actions are redundant where the entity for which the individuals worked is named." *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 646 (M.D. Pa. 2016) (dismissing official-

capacity claims against municipal officials as redundant when municipality was also named as a defendant). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Thus, pursuant to the court's inherent authority to control its docket and avoid duplicative claims, the plaintiffs' official-capacity claims against the individual municipal defendants—Cusat, Perry, Columbo, Mundie, Ondishin, Sacco, Sosar, Schoonmaker, Speziale, DeMalfi, White, Wetzel, McAlarney, Zola, Gallagher, Green, Zubris, Panzarella, Sist, Pavlick, and Perna—may be dismissed as redundant or duplicative of the plaintiffs' substantially identical claims against their employer—the City of Hazleton. *See Korth v. Hoover*, 190 F. Supp. 3d 394, 402–03 (M.D. Pa. 2016); *see also Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131–32 (D.N.J. 2017); *Gretzula v. Camden Cnty. Tech. Schs. Bd. of Educ.*, 965 F. Supp. 2d 478, 487–88 (D.N.J. 2013); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 431–32 (E.D. Pa. 1998).[7]

---

[7] We resort to this discretionary authority here because Rule 12(b)(6) is not an appropriate vehicle for dismissal of redundant or

*(continued on next page)*

Accordingly, the plaintiff's *official-capacity* claims against the individual municipal defendants—Cusat, Perry, Columbo, Mundie, Ondishin, Sacco, Sosar, Schoonmaker, Speziale, DeMalfi, White, Wetzel, McAlarney, Zola, Gallagher, Green, Zubris, Panzarella, Sist, Pavlick, and Perna—will be dismissed as redundant or duplicative of the plaintiffs' claims against their employer, the municipal defendant, City of Hazleton, pursuant to the court's inherent authority to control its docket and avoid duplicative claims.

### D. Shotgun Pleading / Personal Involvement

The defendants have moved to dismiss the complaint in part on the ground that it fails to allege specific conduct with respect to *any* of the individual defendants.

Rule 8 of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

---

duplicative claims. *See generally Satterfield*, 12 F. Supp. 2d at 432 ("[A]lthough we are not required to do so, we will exercise our discretion and grant the [motion] to dismiss the official capacity claims . . . ."); *Crighton v. Schuylkill Cnty.*, 882 F. Supp. 411, 415 (E.D. Pa. 1995) ("Motions to dismiss pursuant to Rule 12(b)(6) test the validity of the compliant. A claim that is redundant is not necessarily invalid.").

R. Civ. P. 8(a)(2). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief . . . . [W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555 n.3).

"Complaints that violate Rule 8 are often referred to as 'shotgun pleadings.'" *Fike v. Global Pharma Healthcare Private, Ltd.*, 741 F. Supp. 3d 265, 271 (E.D. Pa. 2024); *see also Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). "The Third Circuit has criticized 'the all too common shotgun pleading approach' to complaints." *Bartol*, 251 F. Supp. 3d at 859 (quoting *Hynson ex rel. Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988)); *see also M.B. v. Schuylkill Cnty.*, 375 F. Supp. 3d 574, 586 (E.D. Pa. 2018) (same). As the Third Circuit has explained, requiring a plaintiff to plead facts with specificity "ha[s] a twofold purpose: 1) to weed out at an early stage frivolous claims and those that should be heard in state court, and 2) to provide the defendant with sufficient notice of the claims asserted." *Hynson*, 864 F.2d at 1031 n.13; *Bartol*, 251 F. Supp. 3d at 859 (quoting *Hynson*).

The courts of this circuit have described four categories of shotgun pleadings:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Fike*, 741 F. Supp. 3d at 271 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)) (internal quotation marks and brackets omitted); *see also M.B.*, 375 F. Supp. 3d at 586 (quoting *Bartol*, 251 F. Supp. 3d at 859); *Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland*, 792 F.3d at 1321–23). "The 'unifying characteristic' of these four types of shotgun pleadings 'is that they fail to one degree or another, in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland*, 792 F.3d at 1323); *see also Fike*, 741 F. Supp. 3d at 272 (same); *M.B.*, 375 F. Supp. 3d at 586 (quoting *Bartol*, 251 F. Supp. 3d at 859).

In considering the "relatively rare" fourth category of shotgun pleading, the *Bartol* court described two illustrative examples from the Eleventh Circuit:

> In *Magluta v. Samples*, 256 F.3d 1281, 1284 (11th Cir. 2001), the court found that a complaint that was fifty-eight pages long, named fourteen defendants, and charged all defendants in each count was "a quintessential 'shotgun' pleading" because it was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." Similarly, in *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997), the court described as a "prototypical 'shotgun complaint'" one that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants."

*Bartol*, 251 F. Supp. 3d at 859–60 (citations omitted). The *Bartol* court then described the complaint before it, which we find similarly illustrative of the fourth category of shotgun pleading:

> Here, Plaintiff's complaint, which is fifty-four pages long, brings thirteen different counts against any combination of well over seven distinct defendants. Most of these defendants were not present during the events at issue in this case, and it is likely that many have never had any interaction with Plaintiff at all. For example, aside from Police Officers Barrowclough, Ryan, and O'Neill, the defendant individual members of the Tinicum Township Police Department largely

> can be presumed, based on "geographic and temporal realities," to have no knowledge or involvement in [the plaintiff's excessive force and other arrest-related claims]. The same is true for the individual members of the Tinicum Township Board of Commissioners.

*Id.* at 860 (footnote and citation omitted).

"Although there is no categorical prohibition against [such] group pleading, a complaint is insufficient where there is genuine uncertainty regarding who is responsible for what, such as when multiple defendants are accused of acting jointly." *Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 683–84 (E.D. Pa. 2024) (internal quotation marks and brackets omitted); *see also Moe v. Twp. of Woodbridge*, No. 19-14139, 2020 WL 6156756, at *4 (D.N.J. Oct. 20, 2020) ("Mere conclusory allegations against defendants as a group which fail to allege the personal involvement of any defendant are insufficient to survive a motion to dismiss.") (internal quotation marks and brackets omitted). "To survive a motion to dismiss, then, a complaint must plead sufficient facts to show that the plaintiff is entitled to relief *from a particular defendant.*" *Salyers*, 731 F. Supp. 3d at 684 (internal quotation marks and brackets omitted); *see also Moe*, 2020 WL 6156756, at *4 ("When different defendants are named in a complaint, plaintiff cannot refer to all

defendants who occupied different positions and presumably had distinct roles in the alleged misconduct without specifying which defendants engaged in what wrongful conduct.") (internal quotation marks and brackets omitted).

In this case, the five nominal plaintiffs have filed a 57-page, 292-paragraph complaint asserting federal and state-law claims in nine separate counts against 26 separate defendants. But while it may be verbose and otherwise detailed, the complaint remarkably alleges absolutely no conduct whatsoever by *any* individual defendant. Throughout the complaint, the plaintiffs have generally attributed acts, omissions, knowledge, and intent to the City of Hazleton itself. In a handful of factual allegations, the plaintiffs have referenced individual municipal officials or employees as members of a larger group, such as "police defendants,"[8] the City's "police department,"[9] its "code enforcement office,"[10] its "city council" or "councilpersons," or its

---

[8] We note that the complaint defines "police defendants" in passing to include both the City's police department and its code enforcement office. *See* Compl. ¶ 105.

[9] We note that the complaint identifies ten individual defendants who serve or served in the City's police department.

[10] The complaint identifies two individual defendants who serve as

*(continued on next page)*

"officials."[11] The complaint also vaguely references an undefined group labeled as "City Defendants"—possibly the current and former mayors and the city council members, possibly some other unspecified combination. The complaint also refers to Paul's Auto Body and Mechanical Repair Center, Inc., Paul F. Sateach, and Paul J. Sateach collectively throughout, sometimes as "Paul's Towing, Paul Sateach Sr., and Paul Sateach Jr.," and sometimes as just "Paul's Towing," without attributing any acts, omissions, knowledge, or intent to either of the individual defendants. Moreover, almost all of the acts, omissions, knowledge, and intent alleged in the complaint are pleaded in vague and conclusory fashion, without articulating any actual facts in support.

Based on the foregoing, we conclude that the complaint fails to give the individual defendants adequate notice of the claims against them and the grounds upon which each claim rests. *See Bartol*, 251 F. Supp. 3d at

---

code enforcement officers. It also identifies two individual defendants who serve as right-to-know officers, but it is unclear to the court whether they serve in the code enforcement office, which underscores the point at issue.

[11] Not always, but often when referencing the City's "officials," the complaint has included an additional clause clarifying that these officials "include" the current mayor, the former mayor, and all councilpersons— a total of eight individual defendants, none of whom are alleged to have taken any particular action in any of these allegations.

860; *see also Weiland*, 792 F.3d at 1323; *Phillips*, 515 F.3d at 232. Thus, we find that the complaint is an improper "shotgun pleading" that fails to comply with Rule 8(a)(2).

In addition, with respect to the federal civil rights claims asserted in Counts II, V, VI, VII, and VIII, it is well established that "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Where there are multiple events and defendants at issue, a plaintiff cannot allege personal involvement by repeatedly and collectively referring to the defendants as a group without clarifying the specific basis for *each* defendant's liability. *See Lawal v. McDonald*, 546 Fed. App'x 107, 113 (3d

Cir. 2014); *see also Caristo v. Blairsville-Salsburg Sch. Dist.*, 370 F. Supp. 3d 554, 569 n.21 (W.D. Pa. 2019) ("Plaintiff must plead facts demonstrating the specific personal involvement of each Individual Defendant as to any Constitutional deprivations she alleges. Group pleading as to such matters will not suffice."). Here, the complaint alleges only the position or role of each individual defendant within a municipal or corporate organization, without alleging any facts to establish personal involvement by any of the individual defendants in any of the alleged wrongful conduct.

Accordingly, the remaining counts of the complaint will be dismissed with respect to all individual defendants in their personal capacity as improper shotgun pleading and for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### E. Affirmative Defense of Release

The remaining claims by DeLuca's Towing, set forth in Counts IV, V, VI, VII, VIII, and IX, are based on the City's alleged refusal to complete statutorily mandated salvage paperwork. The municipal defendants have asserted an affirmative defense of release, proffering a general release entered into by DeLuca's Towing in connection with prior state-

court litigation concerning the City's refusal to complete statutorily mandated salvage paperwork for DeLuca's Towing during calendar years 2016, 2017, and 2018. Although the plaintiffs have limited the scope of DeLuca's Towing's claims in this action concerning the City's refusal to complete salvage paperwork to the period commencing with calendar year 2019, the municipal defendants contend that any claims by DeLuca's Towing based on the City's refusal to complete salvage paperwork beginning in calendar year 2019 also fall within the scope of the release.

Although the complaint makes reference to settlement of the prior state-court litigation, the release itself is not described or incorporated by reference into the complaint. Nor are the terms of the release integral to any of the plaintiffs' claims. There is nothing to suggest that the release itself was filed in the public record of state court proceedings. Thus, in the exercise of our discretion, we will exclude the release from our consideration in connection with the pending motions to dismiss. *See* Fed. R. Civ. P. 12(d); *see also Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 698 (S.D. Ohio 2013).

### F. Paul's Towing and State Action

The lone remaining federal civil rights claim against Paul's Towing

is a Fourteenth Amendment "class of one" equal protection claim by

Zenier's Towing based on the 2019 and 2023 contracting processes.[12] This

federal civil rights claim is made actionable by 42 U.S.C. § 1983. Section

1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

instead provides remedies for rights established elsewhere. *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983

claim, a plaintiff must establish that the defendant, acting under color of

---

[12] As noted above, the plaintiffs have waived their § 1983 procedural due process claims (Count I), and all claims by DeLuca's Towing concerning the 2019 and 2023 contracting processes have been dismissed for lack of standing, including the § 1983 "class of one" equal protection claim (Count II), the § 1983 sex discrimination claim (Count V), and the § 1985(3) conspiracy to violate equal protection rights claim (Count VI) asserted against Paul's Towing by DeLuca's Towing. The § 1983 procedural due process and substantive due process claims asserted against the municipal defendants by DeLuca's Towing in Counts VII and VIII expressly exclude Paul's Towing as a defendant.

state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

The "under color of state law" element of § 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). It is beyond cavil that Paul's Auto Body and Mechanical Repair Center, Inc., is a private corporation, not an arm of the state.[13] Under limited circumstances, a private entity may be liable under § 1983 if its conduct is so closely related to governmental conduct that it can be fairly viewed as conduct of the state itself. *See Mark*, 51 F.3d at 1142–43. The Third Circuit has outlined three discrete tests to determine whether state action exists: (1) "whether the private entity has exercised powers that are

---

[13] All claims against the individual principals of Paul's Towing—Paul F. Sateach and Paul J. Sateach—have been dismissed on other grounds, but as private individuals, the rationale stated herein would apply to them as well.

traditionally the *exclusive* prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark*, 51 F.3d at 1142 (citations modified). "Under any test, the inquiry is fact-specific." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and brackets omitted).

Invoking the second test, the plaintiffs here argue that Paul's Towing is a state actor because it engaged in a conspiracy with the City and municipal officials. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A sufficient pleading therefore must include "'enough factual matter (taken as true) to suggest that an agreement was made,' [or] in other words, 'plausible grounds to infer an agreement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

But the plaintiffs have failed to allege sufficient facts to plausibly suggest an agreement between Paul's Towing and the City or its officials.

The complaint repeatedly alleges, in conclusory fashion, that the defendants "engaged in a civil conspiracy" or a "discriminatory conspiracy" beginning in 2016 and continuing through the present day, and that the City "coordinated" its allegedly unconstitutional actions with Paul's Towing. But the complaint simply alleges no facts whatsoever from which we may reasonably infer any such agreement or conspiracy. The only actions by Paul's Towing alleged in the complaint relate to the submission of its successful contract bids in 2019 and 2023, and to the ordinary conduct of its vehicle towing business. In conclusory fashion, the complaint asserts that the handling of the 2019 and 2023 contracting processes was motivated by nepotism, only vaguely alleging a familial relationship between the principals of Paul's Towing and one of the seven city council members sued as a defendant, Jack Mundie, and a familial relationship between Mundie and Mayor Cusat.[14] Other than the RFP processes itself, no specific communication between Paul's Towing and any municipal officials is alleged at all, much less an agreement to deprive the plaintiffs of their constitutional rights.

---

[14] In their motion papers, the parties have indicated that Paul F. Sateach and Paul J. Sateach are cousins to Jack Mundie, and that Mundie, in turn, is a cousin of Mayor Jeff Cusat.

The plaintiffs have failed to plausibly allege that Paul's Towing has engaged in a conspiracy with a state actor. Accordingly, the lone remaining federal civil rights claim against Paul's Towing—a § 1983 Fourteenth Amendment "class of one" equal protection claim by Zenier's Towing based on the 2019 and 2023 contracting processes, set forth in Count II of the complaint—will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### G. "Class of One" Equal Protection Claim Against the City

In Count II, Zenier's Towing asserts a § 1983 equal protection claim against the City, based on the 2019 and 2023 contracting processes.[15]

We first consider the plaintiffs' equal protection claim concerning the 2019 contracting process. The statute of limitations for a § 1983 federal civil rights claim arising in Pennsylvania is two years. *See Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989) (citing 42 Pa. Cons. Stat. Ann. § 5524). The date of accrual of the cause of action in a § 1983 action is determined by federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a cause of action accrues "when the plaintiff knew or should have known of the injury upon which

---

[15] *See supra* note 12.

the action is based." *Id.* Based on the allegations of the complaint, any equal protection claims arising out of the 2019 contracting process clearly accrued no later than February 14, 2020—the date when the exclusive towing contract with Paul's Towing was approved by the City and all other towing contracts were terminated. *See* Compl. ¶¶ 112, 159, 176, 195, 218, 237; *see also* Doc. 33-1. At that point, Zenier's Towing unquestionably knew of the injury upon which this particular claim is based. This federal civil action, however, was not initiated until more than five years later on March 20, 2025, and thus it was untimely filed with respect to this claim.[16]

---

[16] In their brief in opposition, the plaintiffs argue only that they have alleged a long-running civil conspiracy, and thus the limitations period should be tolled until the last act in furtherance of that alleged conspiracy occurred on March 28, 2023—the date when Cynthia DeLuca attended a city council meeting to address the City's failure to complete salvage paperwork for DeLuca's Towing. But the plaintiffs have pleaded no facts to support their numerous, but entirely conclusory, allegations of a civil conspiracy among the numerous defendants. *See Boseski v. N. Arlington Mun.*, 621 Fed. App'x 131, 134 (3d Cir. 2015) (holding that a plaintiff's "unsupported assertions that the defendants engaged in a 'continuous tort' and conspiracy are insufficient to justify additional tolling"); *Thornton v. Beaver Cnty.*, No. 2:23-cv-00198, 2025 WL 2748809, at *11 (W.D. Pa. Aug. 21, 2025) ("If the [complaint] contained plausible factual support for its allegations of conspiracy at all, perhaps the continuing violation doctrine could, in theory, be applicable. But because there is no support other than conclusory allegations that a conspiracy
*(continued on next page)*

The 2023 contracting process, however, concluded within the two-year time period before the filing of this action, satisfying the limitations period for any federal civil rights claims based on that municipal action. *See* Doc. 33-2 (2023 exclusive towing contract, dated June 9, 2023).

As previously noted, Zenier's Towing has brought a "class of one" equal protection claim arising out of the 2023 contracting process. The Supreme Court of the United States has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To state a claim under this theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "These challenges fail when 'there is any

---

existed or that these discrete actions were somehow actually connected, the [complaint] fails to allege sufficient plausible facts demonstrating that the continuing violation doctrine could toll any of the statutes of limitations . . . ."), *appeal filed*, No. 25-2840 (3d Cir. Sept. 25, 2025).

reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 Fed. App'x 251, 259 (3d Cir. 2010) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Notably, "the rational basis standard for a 'class of one' claim sets a high hurdle for plaintiffs, requiring a showing of different treatment that is 'irrational and wholly arbitrary.'" *Patterson v. Strippoli*, 639 Fed. App'x 137, 144–45 (3d Cir. 2016); *see also Olech*, 528 U.S. at 564, 565; *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 286 (3d Cir. 2004). There is a "strong presumption of the defendants' actions' validity" when class of one claims are asserted. *Russell v. City of Phila.*, 428 Fed. App'x 174, 177 n.2 (3d Cir. 2011) (per curiam). "In other words, where there is any 'reasonably conceivable state of facts that could provide a rational basis' for the disparate treatment, a 'class of one' equal protection claim fails." *Luna Collision Ltd. v. City of Duquesne*, No. 2:25-cv-867, 2026 WL 693921, at *6 (W.D. Pa. Mar. 12, 2026) (quoting *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 Fed. App'x 251, 259 (3d Cir. 2010)); *see also Heller v. Doe*, 509 U.S. 312, 320 (1993). "Rational basis review is a very deferential standard." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146,

156 (3d Cir. 2018); *see also Luna Collision*, 2026 WL 693921, at *6 (quoting *Newark Cab Ass'n*).

As courts have recognized, this "presumption of rationality" is "in tension with the liberal pleading standard of Fed. R. Civ. P. 12(b)(6)." *Rucci v. Cranberry Twp.*, 130 Fed. App'x 572, 575 (3d Cir. 2005); *see also Luna Collision*, 2026 WL 693921, at *6. To "accommodate both interests," we must "accept as true all of the complaint's allegations, including all reasonable inferences that follow, and assess whether they are sufficient to overcome the presumption of rationality that applies" to the challenged practice. *Rucci*, 130 Fed. App'x at 575; *Luna Collision*, 2026 WL 693921, at *6. "If, in its acceptance of the complaint's allegations, a district court identifies facts that may present any conceivable rational basis for the defendant's actions, the plaintiff has not met its burden." *Luna Collision*, 2026 WL 693921, at *6 (citing *Highway Materials*, 386 Fed. App'x at 259); *see also Heller*, 509 U.S. at 320. Indeed, "the plaintiff must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." *Brian B. ex rel. Lois B. v. Pa. Dep't of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000); *see also Luna Collision*, 2026 WL 693921, at *6 (quoting *Brian B.*). A defendant, "conversely, need not

provide an articulated rationale for its for its actions at any time, and it is further appropriate for a court to 'hypothesize interests that *might* support the defendant's decisions.'" *Luna Collision*, 2026 WL 693921, at *6 (quoting *Mary Beth's Towing LLC v. Borough Brownsville*, No. 2:16-cv-00452, 2018 WL 1784556, at *9 (W.D. Pa. Apr. 13, 2018)) (brackets omitted); *see also Hassan v. City of N.Y.*, 804 F.3d 277, 305 (3d Cir. 2015).

Zenier's Towing contends that the City's decision to award the 2023 exclusive towing contract to Paul's Towing—its incumbent provider of municipal towing services—following an allegedly "sham interview" process, was based on nepotistic favoritism. In support, the plaintiffs allege only that the principals of Paul's Towing—Paul F. Sateach and Paul J. Sateach—are related to one of Hazleton's city council members, Jack Mundie, and that Mundie is in turn related to the mayor, Jeff Cusat.[17] Standing alone, however, mere allegations of nepotism or favoritism are insufficient to support an equal protection claim. *See Lake Town Towing v. Utah*, No. 2:23-cv-00818, 2025 WL 1880481, at *2–3 (D.

---

[17] Notably, the complaint does not allege that the Sateaches are themselves related to Cusat, and it does not allege with any specificity the nature of the familial relationships. As we have noted in the margin above, the parties' motion papers indicate that the Sateaches are cousins to Mundie, and Mundie is himself a cousin to Cusat. *See supra* note 14.

Utah July 8, 2025) (plaintiff failed to negative all conceivable reasons for validating county dispatcher's favoritism of one tow-truck company over another); *see also Vera v. Tue*, 73 F.3d 604, 610 (5th Cir. 1996) (sheriff's nepotistic favoritism of bail bond company in which his wife and his sister-in-law had a financial interest); *Espinoza v. City of Tracy*, No. 2:15-751, 2016 WL 6696067, at *4 (E.D. Cal. Nov. 15, 2016) (disciplined police officer alleged "selective enforcement of the disciplinary process" due to "nepotism and favoritism permeating the City"); *Gray v. City of Olive Branch*, No. 2:96CV148, 1998 WL 211766, at *2 (N.D. Miss. Feb. 18, 1998) (city's favoritism in demoting similarly situated police officer who had incurred the favor of the mayor, but terminating the plaintiff). After all, "the Equal Protection Clause does not stand as a general guard against corruption; it protects individuals from specific forms of invidious discrimination." *Lake Town Towing*, 2025 WL 1880481, at *3.

Looking to the allegations of the complaint, we are able to identify at least two facts to suggest a conceivable rational basis for the City's decision to award the 2023 exclusive towing contract to Paul's Towing. First, as the complaint acknowledges, Paul's Towing offered to pay—and, ultimately, paid—$100,000 to the City to obtain the exclusive right to

provide municipal towing services to the City of Hazleton. *See* Compl. ¶¶ 101, 119, 143, 161, 179, 196; *see also* Doc. 33-2. The complaint does not allege that Zenier's Towing offered to pay an equal or greater amount to secure the contract.[18] Second, in considering bids for the 2023 exclusive towing contract, the City may have considered the fact that Paul's Towing was the incumbent provider of these services, with a three-year track record under the expiring 2020 agreement. The complaint does not allege any facts to suggest that the City was or should have been dissatisfied with the performance of Paul's Towing over that three-year period when it had served as the City's exclusive municipal towing services provider. Nor does it allege any facts to suggest that the bid offered by Zenier's Towing was manifestly superior to that of its incumbent towing contractor, Paul's Towing. Thus, we find that the plaintiffs have failed to carry their burden to allege facts sufficient to overcome the presumption

---

[18] We note that the parties briefs indicate that Zenier's offered to pay significantly less than Paul's Towing in competing for the 2020 exclusive towing contract. *See* Paul's Towing Br. Supp. 19 ("Zenier's offered to pay $35,000, Paul's offered to pay $85,000[.]"), Doc. 21. Although Zenier's Towing was one of two companies that competed against Paul's Towing for the 2023 exclusive towing contract, the record does not reflect any specific monetary offer Zenier's Towing may have made in connection with that process.

of rationality that applies to the City's decision to award the 2023 exclusive towing contract to Paul's Towing instead of Zenier's Towing.

Accordingly, the § 1983 Fourteenth Amendment "class of one" equal protection claim by Zenier's Towing against the City based on the 2019 and 2023 contracting processes, set forth in Count II of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).[19]

### H. Sex-Discrimination Equal Protection Claim Against the City

In Count V, DeLuca's Towing asserts a traditional § 1983 sex-discrimination equal protection claim against the City. In support, the complaint alleges that, on an unspecified number of occasions and on

---

[19] We note that the defendants have also persuasively argued that the City's selection of an exclusive municipal towing services contractor may constitute the sort of discretionary decision that is not amenable to a "class of one" equal protection claim. See, e.g., Luna Collision, 2026 WL 693921, at *6–8; Mary Beth's Towing, 2018 WL 1784556, at *8–9; Hruska Plumbing Co. v. Terrick, No. 2:13-cv-00064, 2013 WL 1776278, at *5 n.3 (W.D. Pa. Apr. 25, 2013) (noting, in considering a "class of one" equal protection claim brought against a municipality by a plumbing contractor, that a "class-of-one equal protection claim is not cognizable in the context of public employment"). But we do not reach a decision on this particular issue, having concluded that the complaint reveals a rational basis for the City's 2023 contracting decision.

unspecified dates between 2016 and 2023,[20] the City refused to complete statutorily mandated salvage paperwork for DeLuca's Towing. It alleges that, on an unspecified date and continuing for an unspecified duration, the City refused to issue or renew a business license for DeLuca's Towing, requiring the company to seek the intervention of state legislators on its behalf.[21] It alleges that, on an unspecified number of occasions and on unspecified dates between 2016 and 2023, the City denied multiple right-to-know requests from DeLuca's Towing regarding these actions.[22]

To state an equal protection claim, a plaintiff must plausibly allege that she was treated differently from persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S.

---

[20] Although the complaint alleges that the allegedly discriminatory course of conduct began in 2016, it expressly disclaims any claim for damages prior to 2019, due to a 2024 settlement entered into with respect to a mandamus action brought by DeLuca's Towing in 2019, based on the City's failure to complete statutorily mandated salvage paperwork during calendar years 2016, 2017, and 2018.

[21] Although not clearly alleged, it appears that DeLuca's Towing ultimately received the requested business license renewal with the assistance of the state legislators.

[22] We note that the complaint does not allege that the City improperly denied any of these unspecified right-to-know requests, or that DeLuca's Towing sought administrative or state judicial review of any of these denials.

432, 439 (1985). "In the context of a sex discrimination claim, plaintiffs must show that this disparate treatment was based upon gender." *Reach Academy for Boys & Girls, inc. v. Del. Dep't of Educ.*, 46 F. Supp. 3d 455, 471 (D. Del. 2014); *see also Kahan v. Slippery Rock Univ. of Pa.*, 50 F. Supp. 3d 667, 705 (W.D. Pa. 2014). Mere conclusory allegations will not suffice. *See Blanchard v. Gallick*, 448 Fed. App'x 173, 176 (3d Cir. 2011).

DeLuca's Towing alleges in conclusory fashion that "the defendants intentionally discriminated against them on the basis of sex . . . due to DeLuca's Towing being a female-owned and operated business," Compl. ¶ 211, but beyond the fact that DeLuca's Towing is female-owned and all other towing and salvage companies in the area are male-owned, the complaint has failed to articulate any facts whatsoever to support a *plausible* claim that DeLuca's Towing was indeed treated differently from similarly situated comparators. The bald assertion that male or male-owned towers and salvors were treated in a dissimilar manner, without more, does not provide the defendant with the notice required to frame a responsive pleading to DeLuca's Towing's equal protection claim. *See Young v. New Sewickley Twp.*, 160 Fed. App'x 263, 266 (3d Cir. 2005); *see also D'Altilio v. Dover Twp.*, No. 1:06-CV-1931, 2007 WL 2845073, at *8

(M.D. Pa. Sept. 26, 2007) ("[T]he plaintiff must allege 'occasions or circumstances' of differential treatment."). The complaint has failed to allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Earle Asphalt*, 2023 WL 8711815, at *1 (quoting *Twombly*). Moreover, "even if [the complaint] were deemed sufficient to suggest differential treatment, it lacks any factual basis for an inference that [the plaintiff] was treated differently because of [her] gender." *Burnett v. Springfield Twp.*, Civil Action No. 13-1646, 2014 WL 3109963, at *8 (E.D. Pa. July 8, 2014); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (upholding dismissal of complaint that "does not contain any factual allegation sufficient to plausibly suggest [the defendants'] discriminatory state of mind").

Accordingly, DeLuca's Towing's § 1983 sex-discrimination equal protection claim against the City, set forth in Count V of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## I. Section 1985(3) Civil Rights Conspiracy Claim Against the City

In Count VI, DeLuca's Towing asserts a § 1985(3) conspiracy to violate civil rights claim against the City based on its refusal to complete

statutorily mandated salvage paperwork for DeLuca's Towing, preventing the business from disposing of abandoned vehicles it had towed to and stored on its property, causing financial losses in excess of $2.7 million. The plaintiffs allege that the City and the individual municipal defendants conspired to deprive DeLuca's Towing of its equal protection rights by refusing to complete the statutorily mandated salvage paperwork because DeLuca's Towing is a female-owned business.[23]

"[F]or purposes of section 1985(3), a municipality and its officials are considered a single entity which cannot conspire with itself." *Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012). "Nonetheless, under the intracorporate conspiracy doctrine, a section 1985(3) conspiracy between a municipality and one of its employees may be maintained to the extent that liability is asserted against the employee in his individual, rather than official, capacity." *Id.* But, as addressed above, all personal-capacity claims against the individual municipal defendants

---

[23] As originally pleaded, DeLuca's Towing also asserted this claim against Paul's Towing based on its role in the 2019 and 2023 contracting processes, but that portion of Count VI has been dismissed for lack of standing.

have been dismissed.

Moreover, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Min. Co.*, 615 F.3d at 178. As we have observed above, a sufficient pleading therefore must include "'enough factual matter (taken as true) to suggest that an agreement was made,' [or] in other words, 'plausible grounds to infer an agreement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Much as with the plaintiffs' claims against Paul's Towing, the complaint simply fails to allege any specific facts to suggest the existence of a conspiratorial agreement between the City and any of its officials or employees, relying on conclusory allegations only.

Accordingly, DeLuca's Towing's § 1985(3) civil rights conspiracy claim against the City, set forth in Count VI of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### J. Paperwork-Related Due Process Claims Against the City

In Counts VII and VIII, DeLuca's Towing has asserted § 1983 procedural and substantive due process claims against the City based on

the City's alleged refusal to complete statutorily mandated salvage paperwork. In support, the complaint alleges that, on an unspecified number of occasions and on unspecified dates between 2016 and 2023,[24] the City refused to complete statutorily mandated salvage paperwork for DeLuca's Towing. This course of conduct allegedly culminated in an appearance by Cynthia DeLuca at a city council meeting on March 28, 2023, in which she demanded that the council take action to direct that City officials complete the salvage paperwork submitted by DeLuca's Towing. With respect to its substantive due process claim, DeLuca's Towing further alleges that the City's refusal to complete salvage paperwork impinged on the use of its land by leaving numerous abandoned vehicles stranded there.

The defendants seek to interpose a statute of limitations defense, arguing that, in light of the City's exclusive municipal towing contract with Paul's Towing and concurrent termination of all other municipal towing agreements in February 2020, the complaint has failed to allege the occurrence of any deprivation of a protected property interest within the applicable two-year limitations period—that is, on or after March 20,

---

[24] *See supra* note 20.

2023.[25] *See Bougher*, 882 F.2d at 78–79 (citing 42 Pa. Cons. Stat. Ann. § 5524). In response, the plaintiffs have argued that, notwithstanding the complete cessation of all *municipal* towing service requests to DeLuca's Towing after the City entered into its exclusive towing services contract with Paul's Towing, the City continued to refuse to process salvage paperwork for abandoned vehicles that DeLuca's Towing towed at the request of its private, nonparty customers.[26]

But beyond vague and conclusory allegations that the City failed to complete statutorily mandated salvage paperwork for DeLuca's Towing an unspecified number of times over a seven-year period—with only the last nine days of that period falling within the applicable statutory limitations period—the complaint has failed to plausibly allege the occurrence of events within the applicable limitations period to support a plausible procedural or substantive due process claim. The complaint does not allege that, at any time, DeLuca's Towing received a request to tow any particular abandoned vehicle from private property, took

---

[25] The complaint in this action was filed on March 20, 2025.

[26] State law provides that a vehicle may be presumed abandoned if left on private property without consent of the owner of the property for more than 24 hours. *See* 75 Pa. Cons. Stat. Ann. § 102 (defining "abandoned vehicle").

possession of any particular abandoned vehicle from private property, or requested that Hazleton police complete salvage paperwork for any such abandoned vehicle, nor does it allege that any such particular request was denied by police or other City officials. The complaint also does not allege any specific facts to support its conclusory allegation that its land was rendered unusable by an accumulation of vehicles caused by the City.

Accordingly, DeLuca's Towing's § 1983 salvage paperwork-related procedural and substantive due process claims against the City, set forth in Counts VII and VIII of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).[27]

### K. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must

---

[27] We note that the defendants have also persuasively argued that the complaint has failed to allege sufficient facts to demonstrate that the City's alleged misconduct rose to the level of "conscience-shocking" behavior. *See, e.g., Pompey Coal Co. v. Borough of Jessup*, No. 3:20-cv-00358, 2021 WL 1212586, at *8 n.13 (M.D. Pa. Mar. 31, 2021) (noting that "personal or political animus is not sufficient to meet the 'shocks the conscience' standard"). But we do not reach a decision on this particular issue, having concluded that the complaint otherwise fails to plausibly allege a substantive due process claim.

permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). It is not clear, however, that amendment would be futile, nor is there any basis to believe that it would be inequitable. Therefore, the complaint will be dismissed with leave to amend.

### L. State-Law Tort Claims

In Counts III, IV, and IX the plaintiffs have asserted state common law claims of unlawful restraint of trade, tortious interference with prospective economic advantage, and unjust enrichment. Where a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). "[I]n the usual case in which

all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. Upon consideration of these factors and the record before us, we find nothing to distinguish this from the usual case. Therefore, the remaining state-law claims will be dismissed *without prejudice* pursuant to 28 U.S.C. § 1367(c)(3).

## III.   CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss will be granted. All claims by DeLuca's Towing concerning the 2019 and 2023 exclusive towing contract RFP processes will be dismissed for lack of Article III standing. The procedural due process claims asserted by Zenier's Towing, will be dismissed as waived and for failure to state a claim upon which relief can be granted. All official-capacity claims against the individual municipal defendants will be dismissed as redundant or duplicative of the plaintiffs' claims against their municipal employer, City of Hazleton, pursuant to the court's inherent authority to control its docket and avoid duplicative claims. All remaining claims will be dismissed with respect to all individual defendants in their personal

capacity as improper shotgun pleading and for failure to state a claim upon which relief can be granted. The § 1983 "class of one" equal protection claim asserted by Zenier's Towing will be dismissed for failure to state a claim upon which relief can be granted. The § 1983 gender-based equal protection claim, § 1985(3) civil rights conspiracy claim, and paperwork-related § 1983 procedural and substantive due process claims asserted by DeLuca's Towing will be dismissed for failure to state a claim upon which relief can be granted. The plaintiffs' remaining state-law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). The plaintiffs will be granted leave to file an amended complaint, if they should so desire.

An appropriate order follows.

Dated: March 27, 2026        *s/Joseph F. Saporito, Jr.*
                             JOSEPH F. SAPORITO, JR.
                             United States District Judge